IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUDY LYNN YOUNG, | ) | CASE NO. 5:13 CV 1377 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by Judy Lynn Young under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying her applications

for disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 19. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Young, who was 50 years old at the time of the administrative hearing,[11] shared a home with her former husband and largely spent her time preparing meals and tending to household chores.[12] She is a high school graduate and previously worked as a cook, in cook prep, as a cleaner, and as a waitress.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Young had the following severe impairments: degenerative disc disease with lumbar spondylosis, obesity, major depression with bipolar features, bipolar disorder with psychotic features, anxiety disorder, and personality disorder.[14]

---

[6] ECF # 13.

[7] ECF # 14 (Young's brief); ECF # 16 (Commissioner's brief); ECF # 17 (Young's reply brief).

[8] ECF # 16-1 (Commissioner's charts); ECF # 15-2 (Young's charts).

[9] ECF # 15-1 (Young's fact sheet).

[10] ECF # 21.

[11] Transcript ("Tr.") at 39.

[12] *Id.* at 32, 38.

[13] *Id.* at 38.

[14] *Id.* at 30.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Young's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand and walk up to four hours during and [sic] eight hour workday, but only one hour at a time; can sit up to six hours during an eight hour workday, but only one hour at a time; can never climb, kneel or crawl; can only occasionally balance, stoop and crouch; must be able to alternate between sitting, standing and/or walking every hour; can maintain attention and concentration to perform simple, routine and repetitive work in an environment free of fast paced production requirements or quotas; can have only superficial contact with co-workers, supervisors and the general public; and can work in an environment with only occasional changes to the work setting and occasional work-related decision making.[15]

The ALJ decided that this RFC precluded Young from performing her past relevant work.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above,[17] the ALJ determined that a significant number of jobs existed locally and nationally that Young could perform.[18] The ALJ, therefore, found Young not under a disability.[19]

---

[15] *Id.* at 33.

[16] *Id.* at 38-39.

[17] *Id.* at 40.

[18] *Id.* at 39-40.

[19] *Id.* at 40.

C.    **Issues on judicial review and decision**

Young asks for reversal of the Commissioner's decision on the ground that it does not

have the support of substantial evidence in the administrative record. Specifically, Young

presents the following issues for judicial review:

- The ALJ gave significant weight to the opinion of Young's treating physician, Dr. Dhyanchand, regarding Young's physical limitations. The ALJ gave no weight, however, to Dr. Dhyanchand's opinion regarding anticipated absence from work and time off task. Did the ALJ properly apply the treating source rule in discounting Dr. Dhyanchand's opinion as to mental limitations?

- In deciding that a substantial number of jobs existed at step five, the ALJ relied upon the VE's answer to the hypothetical that did not include limitations on Young's anticipated absences from work or time spent off task. When such limitations were added to the hypothetical, the VE testified that no jobs would exist. Does substantial evidence support the decision at step five?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is

not supported by substantial evidence and, therefore, must be reversed.

# Analysis

A.    **Standards of review**

1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable

to decisions of the ALJs in disability cases:

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on

-4-

review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.     *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

-5-

> Generally, we give more weight to opinions from your treating sources, since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable

---

[23] 20 C.F.R. § 404.1527(d)(2).

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

---

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

---

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should

---

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the

---

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

---

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

## B. Application of standards

Each counsel affirmed at oral argument that if the present RFC is found to be supported by substantial evidence, then the decision at step five about the existence of a significant numbers of jobs that could be done by a person with that RFC must also be affirmed. Thus, the critical issue before me is whether the RFC is unsupportable because it

---

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

does not account for certain functional limitations expressed in the opinion of Young's treating physician, Charles Dhyanchand, M.D., which opinion, Young contends, was improperly discounted.

In this case, Dr. Dhyanchand, who was Young's primary care physician from 2009 through 2011, gave both an opinion as to Young's physical work-related limitations and a separate opinion as to her mental restrictions on December 5, 2011.[71] As categorized by the ALJ, Dr. Dhyanchand's physical limitations opinion was that Young had pain and decreased range of motion such that she could only stand for one hour at a time and sit for one hour at a time, and would further be off task for twenty percent of the time and miss four or more days of work per month due to her physical limitations.[72] The ALJ found that Dr. Dhyanchand's opinion as to Young's mental capabilities was that Young would have "noticeable difficulties" in performing work-related functions for eleven to twenty percent of the workday or workweek, and would be absent for more than four days per month due to her mental impairments.[73]

The ALJ gave these opinions "significant weight," because, "with the exception of [the] determination regarding claimant's anticipated absences and time spent off task, [Dr. Dhyanchand's opinions were] somewhat consistent with the medical evidence."[74] The

---

[71] Tr. at 36.

[72] *Id.*

[73] *Id.* at 36-37.

[74] *Id.* at 37.

ALJ, in turn, gave no weight to Dr. Dhyanchand's opinions as to Young's anticipated absences or time spent off task, citing as the reason for the complete absence of weight as to these portions of the opinion the determination that these sections were "not supported by [Dr. Dhyanchand's] own treatment notes, and [are] inconsistent with the medical evidence of record."[75]

In addressing the ALJ's treatment of the opinions of Dr. Dhyanchand I note first that the ALJ's decision does not strictly conform to the two-step analytical process set forth in *Gayheart*. The ALJ here collapses that analysis into a single step and bases the conclusion to afford no weight at all to Dr. Dhyanchand's opinions on Young's limitations on work hours on the brief remark quoted above.[76] Moreover, and perhaps more importantly, the ALJ by contrast granted significant weight to the mental functional limitation opinion of the state reviewing psychologist, Paul Tangeman, Ph.D., and to the opinion of state reviewer Carl Tishler, Ph.D., who reviewed the Tangeman opinion along with Young's medical records and affirmed Tangeman's findings.[77]

The situation here, at its core, is complicated by the fact that the Tangeman opinion, which the ALJ stated was done after reviewing Young's medical records,[78] was completed

---

[75] *Id.*

[76] *Id.*

[77] *Id.* at 37-38.

[78] *Id.* at 37.

on July 29, 2010.[79] But both opinions by Dr. Dhyanchand, Young's treating physician, were not done until nearly a year and a half later, on December 5, 2011.[80] As the Sixth Circuit stated in *Blakley,* it is certainly possible for an ALJ to accord greater weight to the opinion of a reviewing source over that of a treating source, such as when the reviewer had access to a more complete medical record than did the treating source.[81] But where the earlier reviewer's opinion was given greater weight without the ALJ explicitly referring to later treatments and opinions by the treating source, and then explaining why the earlier reviewing opinion is nevertheless entitled to greater weight, *Blakley* teaches that the ALJ's decision is not supported by substantial evidence.[82]

In such a situation, *Blakley* makes clear, "the ALJ's incomplete weighing of [the claimant's] treating sources is not an excusable *de minimis* procedural violation."[83] Thus, because without a stated reason for why later treatment records and opinions of the treating source that were not considered by the reviewer nonetheless do not alter the granting of

---

[79] *Id.*

[80] *Id.* at 36.

[81] *Blakley*, 581 F.3d at 409.

[82] *Id.* (citing *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (internal quotation omitted).

[83] *Id.*

greater weight to the reviewer's opinion, there is no meaningful way to judicially review the decision to assign weight.[84]

Here, in the time between when the state reviewer considered the record in July, 2010, and when Young's treating physician gave his opinion at the end of 2011, Young was seen five times by Dr. Dhyanchand in 2010 and ten more time by him in 2011, with every visit documented by treatment notes.[85] It is simply not possible to conclude, with no analysis by the ALJ, that these 15 separate, documented treatment visits, which were not seen or considered by the state agency reviewer in formulating his opinion, are completely irrelevant to the decision to assign greater weight to the reviewer's opinion over that of the treating source.

Although the Commissioner here, as always, has done a thorough and competent job in seeking on her own to locate substantial evidence in the record to support the ALJ's ultimate decision to afford less weight to the opinion of Dr. Dhyanchand, the failure by the ALJ to follow due process by clearly noting the later evidence not addressed by the reviewer and plainly explaining why that later evidence does not weaken the reviewer's weight "prevents this Court from finding that the Commissioner's decision is supported by substantial weight."[86]

---

[84] *Id.*

[85] *See*, ECF # 15-2 (Young's chart) at 4-6 (citing transcript).

[86] *Blakley*, 581 F.3d at 410.

-17-

## Conclusion

Therefore, for the reasons stated, substantial evidence does not support the finding of the Commissioner that Young had no disability. The denial of Young's applications is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: September 12, 2014                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge